**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KENNETH SINGLETON**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO.  05-0388**

**N. BURL CAIN, WARDEN**                              **SECTION "S"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.     Factual Background

The petitioner, Kenneth Singleton, is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 3, 1998, Singleton was charged by Bill of

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

Information in Orleans Parish with one count of first degree robbery and one count of car-jacking.[3]
The second count of the Bill of Information was later amended to attempted car-jacking.[4]

The record shows that, on January 17, 1998, Karen McKendrick, the victim of the first-degree robbery, was walking down Jefferson Avenue after 9:00 p.m.[5]  A man approached her and demanded her purse.  McKendrick testified that the man had something that she thought was a weapon, covered with a piece of cloth and pointed at her.  She quickly complied by handing over her shoulder bag.  The man continued to talk to her, but she did not understand what he said.  She then ran home and called the police.  When the police arrived, McKendrick gave them a description of the perpetrator.  Later, on January 20, 1998, she identified Singleton as the robber from a photographic line-up.

In the meantime, at about noon on January 19, 1998, Ann Lind, the victim of the attempted carjacking, was approached by a man as she exited her car in front of her home.  Reaching for her hands, the man said, "Wait· . . ·Give that to me," as he took her purse.  Lind was standing outside of her car when the man entered her vehicle on the driver's side and threw her purse over to the front passenger seat.  The man then exited the vehicle and demanded, "Give it to me."  Lind assumed the man meant her car key because that was the only thing she had at the time.

The man had an unidentifiable object in his hands that he used to strike Lind on the hands causing her to bleed.  As she screamed, she noticed that the man was temporarily distracted by

---

[3]St. Rec. Vol. 1 of 12, Bill of Information, 3/3/98.

[4]*Id.* (handwritten amendment dated 6/26/98); Minute Entry, 6/26/98.

[5]The facts were taken from the opinion on direct appeal issued by the Louisiana Fourth Circuit Court of Appeal. *State v. Singleton*, 801 So.2d 1150, 1153-55 (La. App. 4th Cir. 2001); St. Rec. Vol. 2 of 12, 4th Cir. Opinion, 2001-KA-0852, 11/7/01.

something behind her and by someone approaching from down the street.  Three young men

approached them and the perpetrator took off running down the street.  The three young men chased

after him.  Lind's husband came out of their home as the man was running away and she asked him

to call the police.

Meanwhile, Jason Nay, a neighbor of the Lind's, and his friend William Lee, heard someone

screaming outside.  Nay looked out of his window and saw a man holding on to a woman.  He

retrieved his cordless phone and dialed 911 as he went to stand on his front porch.  When Nay

walked on to the front porch, the man looked in his direction.  He also saw the other three young

men who apparently were coming to assist the woman.  The perpetrator then ran down the street

where the three young men cornered him under a house.  Nay then realized that the victim was his

neighbor Ann Lind.

When officers arrived on the scene, they went to the area where the three young men had the

perpetrator cornered under a house.  The police found and apprehended the man with the help of an

apprehension dog.  Lind identified him at the scene as the man who had taken her purse and

attempted to take her car.  The man she identified was Singleton.

On April 13, 1999, prior to the start of trial, Singelton's retained counsel filed a Motion for

Enforcement of Plea Bargain Agreement, Production and Inspection.[6]  Counsel argued that he had

been offered and accepted a plea bargain for a 15 year sentence.  The motion was denied by the

Court.[7]

---

[6]St. Rec. Vol. 1 of 12, Minute Entry, 4/13/99; Motion for Enforcement of Plea Bargain Agreement, Production and Inspection, 4/15/99.

[7]St. Rec. Vol. 1 of 12, Minute Entry, 4/13/99.

3

Singleton proceeded to trial before a jury of twelve on April 13 and 14, 1999, and was found guilty as charged on both counts.[8]  At a hearing held May 21, 1999, Singleton's retained counsel filed a Motion for New Trial alleging that it was error to have charged two unrelated counts in the same bill of information.[9]  The State also filed a multiple offender bill charging Singleton as a fourth offender.[10]  Singleton's counsel also filed a pleading entitled Objections to Multiple Offender Bill of Information and a Motion to Quash at another hearing held by the Court on June 21, 1999.[11]  Both pleadings challenged the prior proceedings outlined in the multiple bill and alternatively sought to have Singleton charged only as a second offender.  The Trial Court later received an additional brief from the State in support of the multiple bill and conducted several more hearings on the substance of the multiple bill.[12]

Finally, on June 16, 2000, the State withdrew the prior fourth offender multiple bill and filed a new bill charging Singleton as a second multiple offender.[13]  In adjudicating Singleton to be a second offender, the Trial Court also held that the original bill of information complied with Louisiana law in charging two separate offenses in the same document, thereby denying Singleton's

---

[8]St. Rec. Vol. 1 of 12, Trial Minutes (3 pages), 4/13/99; Trial Minutes (2 pages), 4/14/99; Jury Verdict I, 4/14/99; Jury Verdict II, 4/14/99; St. Rec. Vol. 4 of 12, Trial Transcript (pp.1-173), 4/13-14/99; St. Rec. Vol. 3 of 12, Trial Transcript (pp. 174-299); St. Rec. Vol. 5 of 12, Trial Transcript (pp. 300-448).

[9]St. Rec. Vol. 1 of 12, Minute Entry, 5/21/99; Motion for New Trial, 5/24/99; Multiple Bill (4th Offender), undated.

[10]St. Rec. Vol. 1 of 12, Minute Entry, 5/21/99; Multiple Bill (4th Offender), undated.

[11]St. Rec. Vol. 1 of 12, Minute Entry, 6/21/99; Objections to Multiple Offender Bill of Information, 6/21/99; Motion to Quash, 6/21/99.

[12]St. Rec. Vol. 1 of 12, Minute Entry, 9/9/99; Minute Entry, 9/23/99; Minute Entry, 11/17/99; Minute Entry, 2/11/00; Memorandum in Support of Multiple Bill of Information, 9/24/99.

[13]St. Rec. Vol. 1 of 12, Minutes of Multiple Bill Hearing, 6/16/00; St. Rec. Vol. 5 of 12, Sentencing Transcript, 6/16/00.

long-pending Motion for New Trial.[14]  After waiver of legal delays, the Trial Court sentenced Singleton to 50 years imprisonment as a second offender on count one, the first degree robbery charge, and to eight years as to count two, the attempted car-jacking charge.[15]  The sentences were also ordered to run consecutively and without benefit of parole, probation or suspension of sentence. The Court also later denied Singleton's Motion to Reconsider Sentence on June 19, 2000.[16]

On appeal to the Louisiana Fourth Circuit Court of Appeal, Singleton's retained counsel raised seven assignments of error:[17] (1) insufficient evidence to support the verdicts of first degree robbery and attempted car-jacking; (2) the Trial Court erred by denying the motion for new trial based on insufficient evidence; (3) the Trial Court erred by denying a mistrial where the State failed to give defendant a copy of the supplemental police report showing that McKendrick reported that her wallet and driver's license were found and returned to her; (4) the Trial Court erred by denying a mistrial based on ineffective assistance of counsel when trial counsel stated on the record that he should have filed a motion to have the charges severed; (5) the Trial Court erred by imposing consecutive sentences; (6) the Trial Court erred in denying the Motion to Reconsider Sentence where the sentences were excessive; and (7) the Trial Court erred in denying the Motion to Enforce Plea Agreement.

---

[14]St. Rec. Vol. 5 of 12, Sentencing Transcript, p. 4-6, 6/16/00.

[15]St. Rec. Vol. 1 of 12, Minutes of Multiple Bill Hearing, 6/16/00; St. Rec. Vol. 5 of 12, Sentencing Transcript, p. 6, 6/16/00.

[16]St. Rec. Vol. 1 of 12, Minute Entry, 6/19/00; Motion to Reconsider Sentence, 6/19/00.

[17]St. Rec. Vol. 6 of 12, Appeal Brief, 2001-KA-0282, p. 10, 3/21/01.

5

While the appeal was pending, Singleton filed a pro se Motion for Amending and Modifying Sentence on September 25, 2001, requesting that the Trial Court amend his sentences to concurrent rather than consecutive sentences.

Less than two months later, on November 7, 2001, the Louisiana Fourth Circuit affirmed Singleton's conviction and sentences finding no merit to the claims raised.[18]  Singleton's retained counsel filed a Writ Application with the Louisiana Supreme Court seeking review of the same seven claims.[19]

On September 18, 2002, the Trial Court denied Singleton's pending pro se Motion for Amending and Modifying Sentence.[20]  Two days later, on September 20, 2002, the Louisiana Supreme Court denied Singleton's pending Writ Application without reasons.[21]

Singleton's conviction became final 90 days later, December 19, 2002, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

## II.   **Procedural Background**

On July 11, 2003, Singleton's retained counsel filed an Application for Post-Conviction Relief raising five grounds for relief:[22] (1) the Trial Court erred in denying the Motion to Enforce

---

[18]*State v. Singleton*, 801 So.2d at 1150; St. Rec. Vol. 2 of 12, 4th Cir. Opinion, 2001-KA-0852, 11/7/01.

[19]St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 01-K-3170, 12/3/01.

[20]St. Rec. Vol. 1 of 12, Minute Entry, 9/18/02.

[21]*State v. Singleton*, 825 So.2d 1168 (La. 2002); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2001-K-3170, 9/20/02.

[22]St. Rec. Vol. 1 of 12, Minute Entry, 7/11/03; St. Rec. Vol. 7 of 12, Application for Post-Conviction Relief, 7/11/03.

Plea Agreement; (2) the Trial Court erred by denying a mistrial where the State failed to give defendant a copy of the supplemental police report showing that McKendrick reported that her wallet and driver's license were found and returned to her; (3) the Trial Court erred by denying a mistrial based on ineffective assistance of counsel when trial counsel stated on the record that he should have filed a motion to have the charges severed; (4) the Trial Court erred by imposing consecutive sentences; and (5) the Trial Court erred in denying the Motion to Reconsider Sentence where the sentences were excessive.  The pleading also presented two claims raised by Singleton, pro se:[23] (1) the defendant was improperly adjudicated a multiple offender; and (2) Counsel was ineffective for failing to sever the charges, failing to provide legally effective representation, failing to confirm the plea agreement, detrimental reliance on the plea agreement, inadequate preparation for trial, and improper handling of the multiple bill hearing.

On July 30, 2003, the State filed a Motion for Dismissal of Petitioner's Post-Conviction Application based on procedural grounds and a Response to Application for Post-Conviction Relief addressing the merits of the claims.[24]  The Trial Court held an evidentiary hearing on October 17, 2003 at which Singleton, his trial counsel, and his mother testified regarding counsel's performance and the plea offer.[25]

---

[23]*Id.*; St. Rec. Vol. 9 of 12, Pro Se Memorandum in Support of Application for Post-Conviction Relief (undated).

[24]St. Rec. Vol. 1 of 12, Minute Entry, 7/30/03; St. Rec. Vol. 8 of 12, Motion for Dismissal of Petitioner's Post Conviction Application, 7/30/03; State's Response to Application for Post-Conviction Relief, 7/30/03.

[25]St. Rec. Vol. 1 of 12, Minute Entry, 10/17/03; St. Rec. Vol. 9 of 12, Transcript of Post Conviction Hearing, 10/17/03.

In open court on March 15, 2004, the Trial Court entered written reasons denying the Application.[26]  The Court held that the application failed to state a basis for relief under La. Code Crim. P. art. 930.3 regarding the sentencing issues.[27]  In addition, the Court found that the claims were barred from review under La. Code Crim. P. art. 930.4.[28]

Singleton's counsel filed a Writ Application with the Louisiana Fourth Circuit on April 14, 2004.[29]  Counsel raised only four grounds for relief:[30] (1) due to the suppression of discovery of significant physical evidence the defendant was denied effective assistance of counsel; (2) the Trial Court erred in the denial of the application for post conviction relief on the issue of ineffective assistance of counsel; (3) the defendant was improperly adjudicated a multiple offender; and (4) the defendant was denied effective assistance of counsel in the multiple bill proceeding.

The Louisiana Fourth Circuit denied the Application on April 30, 2004, finding no error in the Trial Court's judgment barring the claims from review.[31]  The Court also reiterated that, pursuant

---

[26]St. Rec. Vol. 1 of 12, Judgment, 3/15/04; Minute Entry, 3/15/04.

[27]La. Code Crim. P. art. 930.3 establishes that post-conviction relief will not be granted unless the petitioner can establish that: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

[28]La. Code Crim. P. art. 930.4 provides for the dismissal of a post conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

[29]St. Rec. Vol. 10 of 12, 4th Cir. Writ Application, 2004-K-0604, 4/14/04.

[30]*Id*.

[31]St. Rec. Vol. 10 of 12, 4th Cir. Order, 2004-K-0604, 4/30/04.

to La. Code Crim. P. art. 930.3, *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996),[32] and *State v. Brown*, 870 So.2d 976 (La. 2004),[33] sentencing errors are not cognizable in post conviction proceedings.

On May 28, 2004, Singleton's counsel filed a Writ Application to the Louisiana Supreme Court raising the same four grounds for relief presented to the appellate court on post conviction review.[34]  The Louisiana Supreme Court denied the Application without reasons on October 29, 2004.[35]

## III.   <u>Federal Petition</u>

On February 14, 2005, Singleton filed a petition for federal habeas corpus relief in which he raised three grounds for relief:[36] (1) the evidence was insufficient to support the verdicts; (2) petitioner was denied effective assistance of counsel when trial counsel failed to investigate and seek severance of the offenses; and (3) trial counsel was ineffective during the habitual offender proceedings resulting in his improperly adjudication as a habitual offender.  In its opposition, the State argues that Singleton's first and second claims are without merit and the third claim is procedurally barred from federal review.[37]

---

[32]In *Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[33]In *Brown*, the Louisiana Supreme Court held that applied the rationale of *Melinie* to a challenge made to a multiple offender proceeding which was based on alleged defects in a predicate offense's plea colloquy.

[34]St. Rec. Vol. 9. of 12, La. S. Ct. Writ Application, 04-KP-1293, 5/28/04.

[35]*State v. Singleton*, 885 So.2d 585 (La. 2004); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2004-KP-1293, 10/29/04.

[36]Rec. Doc. No. 1.

[37]Rec. Doc. No. 8.

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[38] applies to Singleton's petition, which was filed by hand delivery in this court on February 14, 2005.[39]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State has raised procedural default as to Singleton's third claim. Before proceeding to the merits of the claims, the Court must address the applicability of the procedural bar.

## V.    Procedural Default

The State contends that Singleton's third claim, regarding his counsel's performance in and the propriety of his habitual offender adjudication, is barred from federal review. In addition, Singleton's claim that counsel was ineffective for failure to investigate and prepare for trial were also procedurally barred from post conviction review. The State argues that the state courts refused to consider the merits of these claims based on state procedural grounds.

---

[38]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[39]Singleton's petition was presented by hand to the Clerk's office on February 14, 2005 and the fee was paid at that time. The federal "mailbox rule" does not apply to a petition unless it is mailed by the prisoner. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.

This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

In this case, the record reflects that the state trial court refused to consider Singleton's claims that counsel was ineffective at trial, and in preparing for trial, and that counsel was ineffective during the habitual offender proceeding. The Court held that these claims failed to present a cognizable ground for relief under La. Code Crim. P. art. 930.3 and were otherwise prohibited as successive under La. Code Crim. P. art. 930.4. The Louisiana Fourth Circuit found no error in this ruling and further explained the applicability the Art. 930.3 bar to the challenges to the multiple offender proceeding and the sentences.

11

On the issue of ineffective assistance of trial counsel, the Trial Court issued the last reasoned opinion barring the claim pursuant to La. Code Crim. P. art. 930.4.  The orders issued by the Louisiana Fourth Circuit and the Louisiana Supreme Court, which did not provide other reasons for denial of relief on this issue, are presumed to have followed the procedural basis for dismissal.  *Ylst*, 501 U.S. at 802.  In addition, to the extent Singleton challenges the multiple offender adjudication itself as a tangent to the ineffective assistance claim,[40] the Louisiana Fourth Circuit provided the last decision barring that issue pursuant to La. Code Crim. P. art. 930.3 and related state case law.

Therefore, the state courts barred review of Singleton's claims based on procedural default pursuant to La. Code Crim. P. arts. 930.4 and 930.3, and related case law.  This Court must consider whether the bar prohibits consideration of the claim on federal habeas corpus review.  For these state-imposed procedural bars to prevent review by this federal habeas court, the bars must be independent and adequate.

### A.     Independent State Ground

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Amos*, 61 F.3d at 338.  For the reasons outlined above, there is no question that each of these procedural rules relied upon by the state courts are independent of federal law.  *See e.g.*, *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (Art. 930.3); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (Art. 930.3); *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980 (E.D.

---

[40]*See*, Rec. Doc. No. 1, Memorandum in Support at p. 13.

La. June 27, 2000) (Art. 930.4); *Johnson v. Cain*, 215 F.3d 489 (5th Cir. 2000) (Art. 930.8); *Glover*, 128 F.3d at 900 (Art. 930.8).

### B.    Adequate State Ground

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.* This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar Singleton's claims.

In doing so, a federal habeas court does not sit, however, to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, the bar must stand.

As noted above, the basis for dismissal of the ineffective assistance of counsel claims was the state procedural ground found in La. Code Crim. P. arts. 930.4 which prohibits review of a claim raised in a successive petition. The Court noted that effectiveness of counsel's assistance at trial with regard to the failure to sever was addressed on the merits on direct appeal. Thus, the new claims of ineffective assistance of counsel brought for post conviction review were successive under Art. 930.4. The court also referenced Art. 930.4(D) in particular as its basis for refusing to review the other claims raised (e.g., the ineffective assistance of counsel for failure to sever, excessive sentence, etc.) which had already been reviewed on direct appeal.[41] The challenge to the habitual offender adjudication was also barred by La. Code Crim. P. art. 930.3, *State ex rel. Melinie* and *State*

---

[41] Art. 930.4(A) only prevents "further" state review of claims already addressed on appeal. Because Singleton's counsel raised claims on post conviction review which were already addressed on direct appeal, further review was not allowed under Louisiana law. However, the prohibition in art. 930.4(A) a true procedural bar to federal review. Because the issues were addressed on the merits on direct appeal, the federal court may consider them. *Bennett*, 41 F.3d at 1581.

*v. Brown*, which establish that Louisiana law does not provide for review of sentencing errors on post-conviction review.

### 1.    La Code Crim. P. art. 930.4

La. Code Crim. P. Art. 930.4 provides for the dismissal of a post conviction application if it (A) raises claims fully litigated on appeal, (B) raises a claim which should have been raised pretrial or during trial, (C) raises a claim which should have been raised on appeal, (D) the application is a successive application which raises claims which are not new or different, or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.  Based on the reasons given by the Trial Court, as adopted by the Louisiana Fourth Circuit, the focus of the bar imposed under Art. 930.4 was to prevent successive efforts to seek review.  Thus, it appears that the courts relied upon parts (C) and (D) of Art. 930.4. For the following reasons, the Court finds that Art. 930.4(C) were adequate support for the state courts' bar to post-conviction review of Singleton's claims.

Art. 930.4(C) prevents post-conviction review of a claim that could have been raised on direct appeal and was not.  This requires the Court to first determine what claims were raised on direct appeal.

Singleton's retained appellate counsel alleged *inter alia* on appeal that the trial court should have granted a mistrial when trial counsel admitted that he should have sought severance of the charges.  To resolve this claim, the Louisiana Fourth Circuit was compelled to examine whether trial counsel was ineffective.  The court resolved that counsel was not ineffective in this regard.

The claims regarding trial counsel other alleged failings and his performance during the multiple bill proceedings could have been raised on appeal tangent to the claims already raised,

especially considering that appellate counsel was not trial counsel.  In addition, the claim that trial counsel erred in pursuing discovery of the police report and other evidence could have been raised on direct appeal.  These issues are clearly tied to the arguments raised on direct appeal.  In fact, in each of these claims on appeal, it is implied that counsel was inhibited from properly representing the defendant and was otherwise misled by the State.  The question of counsel's competence at trial and the prejudice to Singleton's defense was the underlying theme to most of the issues on direct appeal.  Nevertheless, because these claims could have been raised on direct appeal and were not, Art. 930.4(C) stands as an adequate bar to federal review in this case.

The Court also notes that Art. 930.4(D) will not prevent review by this Court of Singleton's claim regarding ineffective assistance of counsel for failing to seek a severance.  The claim was adjudicated on the merits by the State courts during the direct appeal process.  The bar was only to "further" review or repetitive review.  Thus, this Court is not procedurally barred from reviewing this claim on the merits, which is discussed later in this opinion.

### 2.    La. Code Crim. P. art. 930.3

Because Singleton's post conviction claims raised issues with the validity of his multiple offender adjudication and sentences, the state courts also used Art. 930.3 and related case law to bar review of the sentencing issues.  The federal courts have repeatedly held that *State ex rel. Melinie* and La. Code Crim. P. art. 930.3 are adequate state grounds for dismissal which bar review by the federal courts in a habeas corpus proceeding.  *See*, *e.g.*, *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016  (5th Cir. Sept. 28, 2000) (Table, Text in Westlaw); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086 (E.D. La. June 30, 2005) (Berrigan, C.J.) (Art. 930.3 and *State ex rel. Melinie* are independent and adequate); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001)

(Duplantier, J.) (same); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001)

(Schwartz, J.) (same); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000)

(Duval, J.) (same).  The Court therefore finds that the state procedural bar imposed under La. Code

Crim. P. art. 930.3 and *State ex rel. Melinie* is adequate to bar review of the merits of Singleton's

claims by this federal habeas corpus court.

Singleton will be excepted from the procedural bars in spite of his default only if he can

show cause for his default <u>and</u> prejudice attributed thereto.  Alternatively, he could demonstrate that

the federal court's failure to review the claim will result in a fundamental miscarriage of justice.

*Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d  at 338-39 (citing

*Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

## C.    <u>Cause and Prejudice</u>

To establish a cause for his procedural default, Singleton must demonstrate that "some

objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Even under a broad reading,

Singleton has not demonstrated in his pleadings the existence of any objective factor <u>external</u> to the

defense that impeded his ability to raise these claims in a procedurally proper manner.

Furthermore,"the mere fact that counsel failed to recognize the factual or legal basis for a

claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural

default." *Murray*, 477 U.S. at 486; *see also*, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (a

petitioner must first prove that counsel's actions were constitutionally deficient before such a claim

can stand as cause for a procedural default).  Singleton has not shown cause for his failure, or his

counsel's failure, to properly raise these claims in state court.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982)). Thus, having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and Singleton has not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Singleton's claims of ineffective assistance of counsel during trial and the habitual offender proceedings and related claim challenging the habitual offender adjudication are therefore procedurally barred from review by this court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[42]

### D.    <u>Fundamental Miscarriage of Justice</u>

Singleton's only remaining means of escaping this bar is if he can establish that a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish this, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a

---

[42]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. <u>Id.</u> In the instant case, the State has affirmatively raised the procedural default defense.

reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Singleton's challenges here do not relate to his guilt or innocence in connection with the underlying criminal offenses. Instead, his barred claims arise from counsel's performance in the multiple offender adjudication and the enhancement of his sentence. Singleton has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence of the crimes charged. *Murray*, 477 U.S. at 496. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Here, Singleton has not met any exception to the procedural bar. Thus his procedurally defaulted claims, ineffective assistance of counsel in the multiple offender proceeding, ineffective assistance of counsel for failing to investigate, and an improper multiple offender adjudication, must be dismissed with prejudice without review of the merits.

The Court will proceed to the merits of Singleton's remaining two claims which were addressed on the merits in the direct appeal, insufficient evidence and ineffective assistance of counsel for failure to obtain a severance of the charges.

## VI.    <u>Standards of Review on the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law. A state court's determinations of questions

of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Title 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  Title 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from

an incorrect application of federal law.  *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

## VII.   <u>Insufficient Evidence to Convict</u>

Singleton alleges that the evidence was insufficient to prove that he committed first degree robbery and attempted carjacking.  He alleges that the evidence was insufficient to support the finding that McKendrick reasonably believed that he had a gun during the robbery.  Although he indicates in his claim that he is challenging the sufficiency of the evidence in connection with the attempted carjacking claim, Singleton fails to include any argument or explanation of his position.

Singleton's counsel raised this claim on direct appeal to the Louisiana Fourth Circuit. Relying on the rule set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state law, the Court held that the evidence was sufficient for a reasonable jury to have found that McKendrick believed that Singleton was carrying a weapon when he robbed her.  The Court also concluded that the evidence was sufficient for the jury to conclude that Singleton was attempting to get Lind's car

keys from her.  The evidence showed that he took her purse and got into her car.  He then exited the car and asked her to "give it to me."  The only thing she had were her car keys.  This was the last reasoned decision on the issue.  *Ylst*, 501 U.S. at 802.

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, which was relied upon by the state appellate court.  The *Jackson* standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

Claims of insufficient evidence present a mixed question of law and fact.  *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*.  *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

### A.    The First Degree Robbery

The first aspect of his claim is that the evidence was insufficient to prove that he committed first degree robbery.  He argues that there was insufficient evidence to establish that McKendrick, the victim, was led to believe that he had a weapon.

Under Louisiana law, proof of first degree robbery requires a showing that the defendant took something of value from another while leading the victim to reasonably believe he was armed with a dangerous weapon.  La. Rev. Stat. Ann. § 14:64.1; *State v. Hurd*, 917 So.2d 567, 569 (La. App. 5th Cir. 2005).  Relevant to this case, the statute requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the

victim's belief was objectively reasonable under the circumstances.  *State v. Boyance*, 924 So.2d 437, 442 (La. App. 3rd Cir. 2006) (citing *State v. Fortune*, 608 So.2d 148, 149 (La.1992)).

At trial, Karen McKendrick, the victim, testified about the events of Sunday, January 18, 1998.  She stated that a man walked toward her as she was walking down the street to her apartment.[43]  As he approached her, the man asked her for her bag, a gray canvas bag she was carrying over her arm as a purse.[44]  She stated that he had something in his hand that was pointed at her with a cloth over it.[45]  She could not see what was under the cloth but she thought it to be a weapon.[46]  She also stated that, because he had the thing pointed at her, she gave him the bag right away.[47]  McKendrick said that he continued to talk to her but she did not understand so she ran off down the street.[48]  She ran home and called the police.[49]  During further questioning at trial, she testified about the description of the man and her later identification of Singleton in a photographic lineup.

The jury also heard the testimony of Earlette Lucas who testified on behalf of the defense.[50] She testified in great detail about the time she allegedly spent with Singleton, between 7:45 p.m. and

---

[43]St. Rec. Vol. 4 of 12, Trial Transcript (pp. 1 to 173), p. 47, 4/13-14/99.

[44]*Id.*, p. 47-48.

[45]*Id.*, p. 48.

[46]*Id.*

[47]*Id.*

[48]*Id.*, p. 49.

[49]*Id.*

[50]St. Rec. Vol. 3 of 12, Trial Transcript (pp. 174-299), pp. 279-299; St. Rec. Vol. 5 of 12, Trial Transcript (pp. 300-448), pp. 300-337.

12:45 a.m. on January 18, 1998, the night before Martin Luther King Day.[51]  She testified on cross-examination that she never spent time with Singleton and his wife and never called there home before this evening.

Lucas nevertheless testified that she picked Singleton up at his home on Apple Street.  She also explained how they spent part of the evening driving around the West Bank looking for Singleton's cousin.  She testified that, although he was Singleton's cousin, neither of them knew Derrick's last name and neither was sure of where he lived.  After this unsuccessful venture, Lucas drove Singleton to a bar on Adams Street in the Carrollton area of Uptown New Orleans, where they stayed drinking until she brought him home at 12:45 a.m.  She insisted that Singelton remained with her and was with her at the time of the alleged robbery.[52]

Under Louisiana law, direct testimony by the victim that she believed the perpetrator was armed, or circumstantial inferences arising from the victim's immediate surrender of personal possessions in response to threats, may support a conviction for first degree robbery.  *State v. Gaines*, 633 So.2d 293, 300 (La. App. 1st Cir.1993) (citing *State v. Fortune*, 608 So.2d at 149).  However, no weapon need ever be seen by the victim or witnesses or recovered by the police for the trier of fact to be justified in finding that it was reasonable for the victim to believe that the perpetrator was armed.  *See State v. Collier*, 909 So.2d 654, 658 (La. App. 2nd Cir. 2005) (citing *State v. Elam*, 312 So.2d 318 (La. 1975); *State v. Harrison*, 501 So.2d 1041 (La. App. 2nd Cir. 1987)).

---

[51]*Id.*

[52]*See e.g.*, St. Rec. Vol. 5 of 12, Trial Transcript (pp. 300-448), pp. 337.

In this case, both means of proof occurred. McKendrick testified that she believed Singleton had a weapon pointed at her which was concealed under a white cloth or paper. This, she testified, prompted her to immediately turn over her bag to Singleton. Louisiana law did not require that she see a weapon or that one be found. Apparently, the jury did not give any credibility to the testimony of Earlette Lucas.

Thus, considering the evidence presented at trial in the light most favorable to the prosecution, a reasonable jury could have found that Singleton was the person who robbed McKendrick and that McKendrick reasonably believed that Singleton was carrying a weapon during the robbery. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of the Supreme Court precedent found in *Jackson* at its progeny. Singleton is not entitled to relief on this claim.

## B.   Attempted Car Jacking

The second prong of Singleton's claim is that the evidence was insufficient to prove that he committed an attempted car jacking of Ann Lind. Although he has listed this claim, he has not presented any argument in his brief to this court. Based on his claims raised in the state courts, it appears that he challenges whether the state proved any effort on his part to take the car from Lind.

In Louisiana, carjacking is defined in La. Rev. Stat. Ann. § 14:64.2 as the intentional taking of a motor vehicle, belonging to another person, in the presence of that person, a passenger or any other person in the lawful possession of the motor vehicle, by the use of force or intimidation. *State v. Jagers*, 786 So.2d 284, 288 n.2 (La. App. 2nd Cir. 2001); *State v. Jones*, 733 So.2d 127, 139 (La. App. 2nd Cir. 1999). La. Rev. Stat. Ann. § 14:27(A) defines an attempt:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty

25

of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

The element of specific intent may be inferred from the circumstances and the actions or inactions of the perpetrator. *State v. James*, 873 So.2d 858, 861-62 (La. App. 2nd Cir. 2004). Furthermore, carjacking does not require the use of a dangerous weapon. *Jagers*, 786 So.2d at 288 n2.

At trial, Ann Lind, the victim, testified that, on Monday, January 19, 1998, Martin Luther King Day, she returned home from an appointment and got out of her car.[53] She saw a man running up the street who said to her "wait" or "wait a minute."[54] She did not see anyone following him; he just ran up to her car.[55] She asked him what was wrong and he responded "give that to me."[56] He had a sharp piece of metal in his hand which he waived in her face.[57] He then grabbed her purse, threw it into the car and got into the car.[58]

Lind testified that she backed away from the car and crossed the street realizing that she was in trouble.[59] The man looked around in the car, then got out and ran over to her repeating "give it to me."[60] Lind stated at trial that the only thing she had in her hand was the key to the car, so she

---

[53] St. Rec. Vol. 3 of 12, Trial Transcript (pp. 174-299), p. 176.

[54] *Id.*, at p. 176, 198.

[55] *Id.*, p. 177.

[56] *Id.*, p. 176.

[57] *Id.*, p. 180, 201.

[58] *Id.*, p. 176.

[59] *Id.*

[60] *Id.*, p. 177, 178.

assumed that he wanted it.[61]  She stated that he kept grabbing at her hands and continued to say

"give it to me."[62]  He also hit her hands with the sharp object which caused her to bleed.[63]

Lind testified that the man kept trying to shake her hands so she screamed hoping her

husband would hear her.[64]  She stated that the man then looked at something behind her and she

heard a door slam.[65]  He then looked down the street and became distracted.[66]  She looked to her left

and saw two boys running down the street.[67]  The man took off running, and at about the same time,

her husband came out of the house.[68]  She remained with her husband until she was called to identify

the man who was pulled out from underneath the house.[69]

The witness Jason Nay also testified that he was home from school for Martin Luther King

Day.[70]  He testified that he heard Lind screaming and shaking during the confrontation with

---

[61]*Id.*

[62]*Id.*, 179.

[63]*Id.*

[64]*Id.*, p. 180.

[65]*Id.*, p. 180-81.

[66]*Id.*, p. 181.

[67]*Id.*

[68]*Id.*

[69]*Id.*

[70]St. Rec. Vol. 4 of 12, Trial Transcript (pp. 1 to 173), p. 88, 4/13-14/99.

Singleton, which he saw from his window and front porch.[71]  He was also present to identify Singleton as he came out from under the house where he was hiding after the incident.[72]

The witness William Lee also testified that had walked to Nay's house to play football when he heard screaming.[73]  When the screaming continued, he saw Lind being held and shaken by a man.[74]  He was shaking her arms and hands to get her car keys.[75]  Lee stated that he yelled out and the man turned, saw him and took off running.[76]  Lee also testified that he took off after the man who eventually hid under a house.[77]  Lee stated that the homeowner eventually handed him a bat to hold in case the man tried to get away.[78]

A friend of the defendant, Alvin Trimble, also testified that he was with Singleton on Martin Luther King Day which he believed to be on a day in February.[79]  He testified that they took the Magazine Street bus from Lafitte Housing Project on the corner of Galvez Street and Orleans Avenue to go to Singleton's house to see wedding pictures and videos.[80]  He stated that they got off

---

[71]*Id.*

[72]*Id.*, at p. 98.

[73]*Id.*, p. 129, 134.

[74]*Id.*, p. 129, 131.

[75]*Id.*, p. 140.

[76]*Id.*, p. 131.

[77]*Id.*

[78]*Id.*, p. 132.

[79]St. Rec. Vol. 5 of 12, Trial Transcript (pp. 300-448), pp. 342-43, 379.

[80]*Id.*, p. 343.

the bus on Magazine Street and began walking to Singleton's house.[81]  Trimble was surprised to

learn from the prosecutor that Singleton did not live Uptown or anywhere near where they were on

Magazine Street.[82]

Trimble stated that a group of four or five white boys began following them, yelling racial

slurs, and two or three carrying sticks or bats.[83]  He later changed his testimony to say that when the

group yelled racial slurs, he and Singleton became angry and approached the group.[84]  He stated that

the white boys then ran off and retrieved the sticks out of a car and came back after them.[85]  Trimble

stated that he and Singleton split up.[86]  He ran until he lost them and then walked to Freret Street to

catch a bus back to Canal Street.[87]  At one point, he referred to these events as having happened at

night.[88]

Considering the evidence in the light most favorable to the prosecution, the jury heard the

testimony of the victim that she saw a shiny object in Singleton's hand when he approached her with

no one behind him.  After taking her purse, he used the object to beat on her hands until they bled

in an attempt to get the car keys from her.  The altercation was confirmed by the testimony of the

---

[81]*Id.*, pp. 343-44.

[82]*Id.*, p. 357.  The jury had already heard Earlette Lucas testify that Singleton lived on Apple Street, which is no where near Magazine Street.

[83]*Id.*, pp. 344-347, pp. 359-363.

[84]*Id.*, pp. 363-364.

[85]*Id.*

[86]*Id.*, p. 367.

[87]*Id.*, pp. 364, 365.

[88]*Id.*, p. 368.  He previously agreed that it was broad daylight when he got off of the bus on Magazine Street. *Id.*, p. 361.

other state witnesses.  The jury apparently chose to discredit the testimony of the defense alibi witnesses, one of whom was confused about the date and time of day.

Based on these conclusions, the jury could have rationally concluded that the defendant took the vehicle through the use of intimidation.  *State v. Jones*, 733 So.2d at 139.  The credibility in any attributed to the defense witnesses was solely in the discretion of the jury.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Jackson*.  Singleton is not entitled to relief on this claim.

## VIII.   Ineffective Assistance of Counsel

Singleton also alleges that his trial counsel was ineffective on four grounds: (1) counsel was ineffective for failing to move for severance of the charges; (2) counsel failed to properly investigate regarding the recovery of McKendrick's purse; (3) counsel may not have been prepared for trial because he relied on the offer of a plea bargain; (4) counsel was ineffective during the multiple bill proceedings for submitting to the validity of the bill with a challenge.  As discussed previously in this opinion, the second, third and fourth grounds are procedurally barred from federal review.  The Court will therefore proceed to address the first ground only.

Singleton's retained counsel challenged on direct appeal the trial counsel's failure to seek severance of the charges.  The Louisiana Fourth Circuit denied the claim as meritless pursuant to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The court held that Louisiana law did not dictate severance of the claims because of the simplicity of the evidence and the orderly presentation and therefore counsel did not err in failing to seek a severance.  This was the last reasoned opinion on this issue.  *Ylst*, 501 U.S. at 802.

A.      <u>**Supreme Court Standard to be Applied**</u>

In *Strickland*, the case applied by the state courts, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  Singleton, however, suggests that a different standard should be applied.  Singleton sites another Supreme Court case, *United States v. Cronic*, 466 U.S. 648 (1984), as the proper means of evaluating his counsel's performance.

The *Cronic* Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  *Cronic*, 466 U.S. at 654 n. 11.  The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of the defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not."  *Cronic*, 466 U.S. at 658-59 (internal citations omitted).  It is in the presence of these "circumstances of magnitude" where "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Supreme Court also has emphasized that for *Cronic* to apply, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002).  "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding.  *Bell*, 535 U.S. at 697.  The distinction between counsel's failure to oppose the

31

prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." *Bell*, 535 U.S. at 697.

Here lies the distinction in Singleton's case.  He asserts that his counsel erred in failing to seek a severance, a severance which was not required as will be further discussed *infra*.  This is but one aspect of counsel's performance and does not demonstrate a complete failure to challenge the State's case.  On the contrary, even considering Singleton's other alleged errors by counsel, the record would show that counsel's alleged failings were specific to particular aspects of the case.

For example, an issue was raised on appeal regarding the State's failure to disclose that McKendrick's purse had been recovered and how that may have hampered counsel's presentation of a defense.  The prosecutor advised the Court that she did not know the purse had been recovered until McKendrick testified at trial.[89]  While the state courts correctly determined there to be no constitutional error in the late discovery of that fact, Singleton's counsel was able to obtain testimony from McKendrick herself regarding the location of the purse when she recovered it.[90]

McKendrick testified that she recovered her bag from a person who lived at a house on Leontine.  Counsel questioned her repeatedly regarding the differences between Leontine Street and Eleanore Street.[91]  He did so in an effort to discredit Officer Marchese, who stated that the purse was found under a house on Eleanore Street.[92]  Counsel exercised every opportunity to challenge both witnesses in an attempt to discredit the testimony of Officer Marchese regarding the recovery of her

---

[89]St. Rec. Vol. 4 of 12, Trial Transcript (pp. 1-173), 4/13-14/06, pp. 81-82, 85-88.

[90]St. Rec. Vol. 3 of 12, Trial Transcript (pp. 174-299), pp. 274-278.

[91]*Id*.

[92]*See*, *Id*., pp. 237-243, 250-252.

purse.  The fact that the jury apparently did not find a conflict to exist or discredit either witness does not warrant that the *Cronic* scrutiny be applied to this case.

Counsel appropriately questioned or cross-examined every witness at every stage of the trial, as is evidenced throughout the 448 pages of the transcript, and he played a formidable role in the trial.  The Court can not find any basis for applying the *Cronic* standard to this case.

Therefore, the appropriate standard is that in *Strickland*, the case relief upon by the state courts.  A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must determine whether the state court's failure to grant relief to Singleton was contrary to or an unreasonable application of *Strickland*.

### B.   <u>Analysis</u>

Under *Strickland*, To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689.  "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within

a wide range of reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994).  In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.*  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Kimler*, 167 F.3d at 893.  On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To meet the burden of proving ineffective assistance of counsel under *Strickland*, Singleton "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan*, 980 F.2d at 296; *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S.

1167 (2001).  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  *Motley*, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

Louisiana law provides for the joinder of criminal acts in one bill of information or indictment:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. P. art. 493.

In addition, La. Code Crim. P. art. 493.2 also permits joinder where "offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."  However, La. Code Crim. P. 495.1, provides that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

In this case, Singleton has not shown that the joinder of the two crimes was inappropriate or prejudicial. The State presented the crimes as two separate occurrences allegedly committed by Singleton in the same general area. Both crimes were punishable at hard labor. The crimes were similar in character, both involving disguised weapons and the taking of the victim's purses. Both crimes also involved similar schemes, where Singleton hid himself or his loot under houses in the nearby neighborhood. As such, the claims were properly joined under Louisiana law. *See Winfield v. Cain*, 1999 WL 436597 at *5 (E.D. La. June 24, 1999) (separate but similar armed robberies were properly joined under Louisiana law and counsel's failure to move to sever was not deficient performance).

Singleton has not shown prejudice arising from the joinder of these two crimes. Therefore, counsel's failure to file an unnecessary motion to quash because of misjoinder of offenses was not unconstitutional error.[93] *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness), *cert. denied*, 525 U.S. 1174 (1999).

For the foregoing reasons, the state courts' denial of relief on Singleton's claim of ineffective assistance of counsel was not contrary to or an unreasonable application of *Strickland* or any other Supreme Court precedent. Singleton is not entitled to relief on these claims.

## IX.    Recommendation

It is therefore **RECOMMENDED** that Kenneth Singleton's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

---

[93]The Court notes that, pursuant to La. Code Crim. P. art. 495, objections of misjoinder of offenses may be urged **only** by a motion to quash the indictment and not by motion to sever as suggested by Singleton.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____20th_____ day of _____September_____, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**